## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **KELLIN TREADWAY BRASHER,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | **CASE NO.:** |
| | ) | |
| **V.** | ) | **PLAINTIFF DEMANDS TRIAL** |
| | ) | **BY STRUCK JURY** |
| **THE UNIVERSITY OF ALABAMA;** | ) | |
| **THE BOARD OF TRUSTEES FOR** | ) | |
| **THE UNIVERSITY OF ALABAMA,** | ) | |
| | ) | |
| **DEFENDANT.** | | |

## COMPLAINT

COMES NOW, the Plaintiff, Kellin Brasher Treadway ("Brasher") and hereby files this Complaint for damages to be answered by the Defendant pursuant to the Federal Rules of Civil Procedure.

## I.    JURISDICTION

1.    This action for injunctive relief and damages is brought under 28 U.S.C. §§ 1331, 1343(4), 2201, 2202, 29 U.S.C. § 2617(a)(2). The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights caused by the Defendant.

2.    This is a suit authorized and instituted under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., (ADA).

3.      This suit is authorized and instituted under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1991;" 42 U.S.C. § 2000e, et seq. (Title VII).

4.      This suit is authorized and instituted pursuant to the Pregnant Workers Fairness Act (PWFA).

5.      This suit is authorized and instituted pursuant to the 42 U.S.C. 1983 and the Due Process Clause.

6.      Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A).

7.      Plaintiff further sued within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

## II.   PARTIES

8.      Brasher is a resident of Brookwood, Tuscaloosa County, and performed work for the Defendant in the counties composing the Northern District of Alabama Western Division during the events of this case. Thus, under 28 U.S.C. § 1391(b), venue for this action lies in the Division.

9.      Defendant The University of Alabama; The Board of Trustees for the University of Alabama ("Defendant" or "The Board") is a public University in

Tuscaloosa, Alabama which is located in the Northern District of Alabama, Western Division.

10.    Defendant employed at least fifteen (15) people during the current or preceding calendar year.

## III.  FACTS

11.    Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

12.    Brasher began her employment at the University of Alabama as an Instructor in August of 2015.

13.    Brasher taught criminal justice and cyber criminology in the Criminology and Criminal Justice Department.

14.    Brasher went on pregnancy leave from mid-November 2021 to March 1, 2022.

15.    Upon her return from maternity leave, UA announced Adam Lankford would become the new fulltime department chair in the fall of 2022.

16.    Lankford had been in the department as a graduate director prior to becoming department chair. He had been in the department with Brasher for a long time.

17.    In July of 2022, Brasher started the process of requesting ADA accommodations for ADHD and migraines.

18.     ADHD effects most, if not all, of Brasher's daily life activities.

19.     ADHD often lowers dopamine, effects the ability to focus, effects the ability to communicate, causes stress and anxiety which can lead to muscle tension and pain, breathing problems, heart issues, trouble controlling blood sugar, and digestion issues, raises the chances of snoring, sleep apnea, and restless leg syndrome, throws off the body's circadian rhythm.

20.     Brasher requested a quiet office place to work for her ADHD.

21.     Migraines affect daily life activities causing sensitivity to light, noise and smells, severe pain that causes throbbing, pounding or pulsing sensations which limit the ability to work, communicate, and read a computer screen necessary to work.

22.      For her migraines Brasher requested the ability to miss class on short notice as long as she notified a supervisor.

23.     Brasher began to have issues when she came back full time after her leave in the fall of 2022.

24.     Lankford pushed back on Brasher's requests for accommodations.

25.     Lankford asked Brasher a list of questions about her accommodations.

26.     In August of 2022, Brasher's daycare closed, and she was looking for childcare.

27.     Brasher sought to meet with Lankford, but he put off the meeting.

28.    Brasher emailed Lankford to keep him in the loop, to let him know what was going on, and to assure him that she would have the class covered if she had to miss.

29.    Lankford's ultimate response was "get a babysitter".

30.    On or around November 7, 2022, Brasher got very sick and lost her voice.

31.    Brasher was headed to the doctor, so she emailed Lankford and explained to him that she was sick and was going to miss class, but she had the class covered.

32.    Lankford told Brasher to go to class anyway, and claimed the students would appreciate it if she just came in and gave a thumbs up or other affirming gestures.

33.    Brasher attended the class and watched the TA handle the class.

34.    Brasher went to the doctor after class.

35.    Throughout the fall semester, after her request for accommodations, Lankford engaged in strict scrutiny of Brasher

36.    Every other week Lankford was finding "problems" with Brasher, but these "problems" were not problems.

37.    For example, Lankford accused Brasher of teaching a class and getting paid for it where there were no students present, which was false.

38.    Lankford was looking at an empty section of the class and not the class that Brasher was teaching.

39.    Lankford copied several colleagues on his false accusation against Brasher that she was teaching an empty class for pay.

40.    Another example is when a student complained Brasher used discussion too much in her class rather than lecture.

41.    Brasher had been previously instructed to utilize more discussion than lecture in her classroom.

42.    Brittany Vandeberg had previously peer reviewed Brasher's class and told her the students loved the discussion portion of her class and that she should incorporate it more into her lessons.

43.    Because of this heightened scrutiny and conflicting instruction, Brasher requested a meeting with Lankford and Vandeberg to discuss everything going on in person.

44.    Lankford and Vandeberg put off the meeting and did not want to meet until the end of the semester.

45.    Brasher finally met with Lankford and Vandeberg during Christmas break of 2022.

46.    Prior to the meeting, Brasher had never received any bad marks on performance evaluations, and she had never been counseled for poor performance.

47.     Lankford and Vandeberg told Brasher what she was allegedly doing "wrong".

48.     Because this was all news to Brasher, she became upset.

49.     Vandeberg asked Brasher what she was struggling with right now.

50.     But before Brasher could speak and explain Vandeberg said, "I know it is hard having kids and it is tough being a mom".

51.      It was clear they were claiming Brasher's status as a new mom was a problem.

52.     But Brasher's status as a new mother was not her issue, and this was not the topic of discussion.

53.     Every time Brasher tried to explain the techniques that she was using, she was told she needed to use something else.

54.     Upon return from Christmas break things seemed to be okay with Brasher.

55.     But Brasher's request for accommodation was finally granted in April of 2023.

56.     Once her accommodations were granted, Lankford began scrutinizing Brasher and micromanaging her again.

57.     In Spring of 2023, Brasher sent an email to the Associate Dean/Associate Provost Lisa Dorr asking to set up a meeting.

58.    Not long after Brasher sent that email, her dad passed away.

59.    Brasher ended up meeting with Lisa Dorr in September of 2023 to discuss the issues listed above.

60.    Brasher also reported to Dorr that before Lankford was department chair, they were all faculty, but Lankford now made the distinction that instructors are not PHD's and are not faculty.

61.    In addition to the above-stated issues, Brasher reported she had been banned from faculty meetings which is a violation of policy.

62.    Dorr's advice to Brasher was that if she was banned from faculty meetings, then instructors should have their own meetings.

63.    At the conclusion of the meeting, Dorr said she would do what she could.

64.    Brasher heard Dorr had talked to Lankford, but nothing really happened to remedy the problem.

65.     After this conversation with Dorr, Lankford was not only scrutinizing Brasher, but he also became mean toward her.

66.    After Brasher heard Dorr had spoken to Lankford, he sent an email out stating instructors were still not allowed to attend faculty meetings, but if they had an issue or topic that needed to be addressed at the meetings, they could submit them to be read off during the meeting.

67.    That day Brasher had lunch off campus with some of the other instructors, and they put together a list of things that they wanted addressed.

68.    Brasher emailed the list to Lankford and to the undergrad director, Adam Ghazi-Tehrani.

69.    Lankford responded immediately and said Brasher needed to drop everything and come into a meeting with him and Vandeberg.

70.    The first week of advising was reserved for seniors.

71.    But Lankford told Brasher to cancel the meetings and that she had to come in and see him immediately.

72.    Before the meeting, Brasher reached out to Dorr and Leslie Reid for advice.

73.    Dorr told Brasher to just meet with him and see what he wants.

74.    Reid told Brasher she can request what he wants to discuss in the meeting.

75.    Reid explained to Brasher that Lankford cannot fire her, as there is a tribunal process that he has to go through before anyone is terminated.

76.    Brasher emailed Lankford to request the agenda for the meeting.

77.    Lankford was vague and wouldn't tell Brasher what he wanted to talk about.

78.    Brasher asked for more specifics, but Lankford refused.

79.    Brasher reminded Lankford that one of her ADA accommodations requests was that she does better when things are written down.

80.    There were some items Brasher wanted to talk about so she sent it to him.

81.    On October 19, 2023, Brasher went in for the meeting.

82.    Lankford went line by line in her email and told Brasher if anyone is afraid of retaliation in the department then *they* are doing something wrong.

83.    Lankford called Brasher hostile and aggressive.

84.    Lankford berated Brasher for 90 minutes.

85.    During the meeting, Lankford said something that triggered Brashers grief over the loss of her father.

86.    Brasher explained this to them, while trying to catch her breath and asked for a minute before they continued.

87.    Brasher was told she could go out into the hallway where students frequented. Brasher just asked if she could have a minute to compose herself.

88.    But they kept talking over Brasher and wouldn't let her have a break.

89.    Brasher was also getting her doctorate at the University.

90.    There was a faculty fellowship being offered on campus.

91.    All Brasher needed was for her department chair to sign a release to allow her to go do the fellowship outside of the department.

92.    On November 9, 2023, Lankford refused to sign the release claiming his denial was based on his "issues" with Brasher.

93.    Brashers only issues with Lankford were her complaints against him.

94.    Lankford told Brasher if she had a positive year, they could discuss it the following year.

95.    During winter break when campus was closed, a student emailed Brasher about an issue with their grade which was a technical issue with the learning management system.

96.    Brasher wasn't checking email because it was winter break.

97.    But Brasher eventually checked it and got it fixed before school started.

98.    On January 3, 2024, Lankford sent an email to everyone stating he understands we are still on break so feel free to ignore the email until we come back.

99.    The next two days Lankford sent Brasher a few emails about the student's issue with their grade and told Brasher she needed to fix the student's grade.

100.    Because Brasher didn't respond immediately to Lankford on Christmas break, he emailed her again then ultimately had the department administrative secretary call her and tell her to respond to his emails before the semester started.

101.   Brasher responded to the email and let him know it had already been fixed, and she had already received confirmation it was addressed, and the student is happy.

102.   Lankford responded by telling Brasher she should not use her autoresponder.

103.   Brasher was not assigned a TA in the Spring of 2023.

104.   In the fall of 2023, Brasher's TA had a conflict with her schedule and could not help her.

105.   Brasher reached out and asked how to handle the situation and was not given any real solution.

106.   So, in the fall Brasher utilized auto reply to disseminate information to students.

107.   The students reacted favorably to the auto replies as they were getting an immediate response to their questions.

108.   Brasher had about 400 students and no TA so the auto reply made it possible to get information out to students.

109.   Lankford sent out an email to the listserv for full-time instructors (separate from the faculty email listserv) to offer limited availability to meet with him to discuss their evaluations.

110.    These meetings were set to take place during senior advising week, which is an issue Brasher had already mentioned directly to Lankford.

111.    Brasher had already reached out to a mediator on campus to find some help or someone who would do anything.

112.    Brasher found out from the Associate Provost Reid, via the mediator that they were not required to meet with Lankford for their evaluations as stated in the handbook.

113.    Brasher planned on not meeting with Lankford because the meeting in October was traumatic.

114.    Lankford emailed Brasher a week or two later and said he noticed she did not sign up to meet.

115.    Lankford is required to provide a written draft to discuss at the meeting.

116.    Lankford had not sent Brasher anything to review or discuss.

117.    Brasher politely told Lankford she was not requesting a meeting.

118.    Brasher asked Lankford when he would have a draft.

119.    Lankford told Brasher he would get to it when he could, but it would be several weeks.

120.    The day before the deadline for Lankford to respond to the documentation provided by the faculty member, he uploaded the official evaluation without giving Brasher an opportunity to review it.

121.    Brasher only had 24 hours to get her response before the deadline was over.

122.    The evaluation he submitted was full of false "facts" and accusations.

123.    Lankford wrongfully held it against Brasher that she didn't meet him to discuss the evaluation contrary to policy.

124.    Lankford included the fact that Brasher did not respond quickly enough to the student about their grade even though it had already been addressed.

125.    Brasher wrote a rebuttal and called out all the inaccuracies and policies.

126.    Lankford's response was short and said that his evaluation was an overall impression and that he would not be changing anything.

127.    Brasher emailed Leslie Reid, the Associate Provost, who had been a former chair lead.

128.    Reid told Brasher she needed to follow the steps up the chain.

129.    Brasher needed to contact the Dean and request a meeting.

130.    The Dean is supposed to receive a copy of the rebuttal and review it.

131.    At the end of May, Brasher sent an email to the Dean Joseph Messina, and requested a meeting to discuss the inaccuracy of the evaluation.

132.    Dean Messina responded and said they could meet but he will be out of town for the next 10 days, and to set something up after his return.

133.    Before Brasher heard back, she began talking to EEOC.

134.   On July 9, 2024, Brasher received notice that EEO was going to begin investigation into her pregnancy and gender discrimination complaints.

135.   The EEO contact person notified Brasher he would be speaking with Adam Lankford and Lisa Dorr.

136.   Brasher heard back from Dean Messina on July 10, 2024, and they scheduled a meeting on July 16, 2024.

137.   Brasher logged into the meeting.

138.   Brasher was the one who had initially requested this meeting to discuss the inaccuracies and false statements included in her official faculty performance review that was submitted by Adam Lankford.

139.   However, upon beginning the meeting, the Dean immediately made it clear he was not interested in discussing that.

140.   Instead, the Dean told Brasher he was recommending her termination.

141.   The Dean was not interested in discussing Brasher's concerns with Adam Lankford.

142.   Brasher explained she wanted to discuss the inaccuracies and false statements of my evaluation.

143.   The Dean agreed some of the allegations were outside of the time period.

144.    Brasher asked the Dean if he was going to look into the false statements and accusations.

145.    The Dean admitted there were some issues with the timing of events that were included in the FAR, but that he disagreed that there were any other problems.

146.    Brasher explained this had been going on for two years and that she had been trying to get someone to help.

147.    Brasher explained to the Dean it seemed like he didn't care.

148.    The Dean stared at Brasher then said he disagreed, again, that there were issues within the department.

149.    The Dean told Brasher he was basing his termination on student instruction surveys that said she had canceled too many classes which were part of her ADA accommodations.

150.    In Spring 2024, Brasher canceled two individual classes over the course of the semester where the class was not covered by either another lecturer or external work/individual meetings (all approved methods of handling missed classes, according to the bylaws and previous department admin).

151.    On one occasion, Brasher was in a minor car accident as she moved between classes.

152.    Brasher was still in attendance for the next class that day.

153.    Brasher technically canceled class, but she then sent a follow-up email soon after the initial one that said she would be able to make it to class after all and would be able to help them with their papers until the end of the class period.

154.    On another occasion during that semester, Brasher was in the hospital, but had managed to cover most (if not all) of her class sections for the days she might miss.

155.    Brasher did miss other classes, but each class was appropriately covered, per the handbook and department practice.

156.    Brasher is aware of a male faculty member during this same time period (2023/2024) that cancelled at least two full weeks of class without explanation or other coverage.

## IV.  CLAIMS

### COUNT I– ADA – RETALIATION

157.    Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

158.    Plaintiff was qualified for her position and able to perform the essential functions of the job.

159.    On or about July 9, 2024, Plaintiff engaged in protected activity, when she initiated contact with EEOC about the fact that each time she discussed her disability accommodations with her department chair, he would begin to treat her

differently, intensely scrutinize her, became mean to her, and was using her disability accommodations in her evaluation against her

160.    On or about July 9, 2024, the EEO contact notified Brasher they were going to speak with her Department Chair Adam Lankford and Associate Dean/Associate Provost Lisa Dorr to investigate her claims.

161.    On or about July 16, 2024, Plaintiff's employment was terminated.

162.    But for Plaintiff's protected activity, Defendant would have retained Plaintiff in his position as an Instructor.

163.    Defendant violated the ADA by terminating Plaintiff for engaging in protected activity.

164.    Because of Defendant's violation of the ADA, Plaintiff has been damaged suffering loss of pay, benefits, and mental anguish.

## COUNT II- PWFA RETALIATION

165.    Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

166.    Plaintiff was qualified for her position and able to perform the essential functions of the job.

167.    On or about July 9, 2024, Plaintiff engaged in protected activity, when she initiated contact with EEOC about the fact her Department Chair Adam

Lankford and Brittany Vandeberg told her she was having problems because she was a new mother and treated her differently for that reason.

168.   On or about July 9, 2024, the EEO contact notified Brasher they were going to speak with her Department Chair Adam Lankford and Associate Dean/Associate Provost Lisa Dorr to investigate her claims.

169.   On or about July 16, 2024, Plaintiff's employment was terminated.

170.   But for Plaintiff's protected activity, Defendant would have retained Plaintiff in his position as an Instructor.

171.   The Defendant violated the PWFA by terminating Plaintiff for engaging in protected activity.

172.   Because of Defendant's violation of the PWFA, Plaintiff has been damaged, suffering loss of pay, benefits and mental anguish.

## COUNT III- ADA DISCRIMINATION – TERMINATION

173.   Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

174.   Plaintiff suffers from the physical impairments of ADHD and migraines.

175.   The Defendant knew Plaintiff's disability and granted her request for accommodation.

176.   The Plaintiff's ADHD and migraines affects her daily life activities of focus, communication, ability to work under lights with a computer are significantly restricted as compared to the average person in the general population.

177.   Plaintiff was able to perform the essential functions of their job with or without accommodation for their disability.

178.   At all times relevant to this complaint, Plaintiff performed the essential functions of their job duties as in a satisfactory or better manner.

179.   On July 16, Defendant terminated Plaintiff's employment, citing her disability accommodations as the reason.

180.   The Dean expressly told Brasher he was basing his termination on student instruction surveys that said she had canceled too many classes.

181.   Cancellation of classes was part of her ADA accommodations.

182.   There is no logical, medical or other basis to believe that Plaintiff's disability would prevent Plaintiff from performing the essential functions of the job.

183.   But for Plaintiff's disability, Defendant would have retained Plaintiff in them position as an Instructor.

184.   Defendant violated the ADA by terminating the Plaintiff's employment because of her disability.

185.   Because of Defendant's violation of the ADA, Plaintiff has been damaged, suffering loss of pay, benefits and mental anguish.

## COUNT  IV- ADA - HOSTILE WORK ENVIRONMENT

186.    Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

187.    Brasher was harassed because of her disability of ADHD and Migraines.

188.    Department Chair Adam Lankford questioned the need for the accommodation requiring Brasher to respond to entire list of questions about her request for accommodation.

189.    Each time Brasher requested accommodation or brought up the need for her accommodation to be honored, her Department Chair Adam Lankford would increase his scrutiny of her and become mean toward her.

190.    Department Chair Adam Lankford falsely accused Brasher of teaching to an empty class in front of her peers and supervisors, he refused her leave for the care of her child, and he refused her leave to see the doctor when she was ill after Brasher requested accommodations, refused to sign off for Brasher to complete her graduate program, and refused her the ability to collect herself during a meeting wherein he triggered her grief over the death of her father.

191.    Department Chair Adam Lankford repeatedly refused to put things in writing for Brasher which not only violated policy, it failed to accommodate Brasher for her ADHD.

192.    The harassment created a hostile work environment for Plaintiff.

193.    Plaintiff reported her Department Chair Adam Lankford's harassing behavior on multiple occasions and sought help from his harassment for two years.

194.    The Defendant failed to take prompt remedial action (or any action) to remedy the harassment.

195.    Plaintiff suffered damages because of the hostile work environment including loss of pay, benefits, and mental anguish.

## COUNT V- TITLE VII - RETALIATION

196.    Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

197.    Plaintiff was qualified for her position and able to perform the essential functions of the job.

198.    On or about July 9, 2024, Plaintiff engaged in protected activity, when she initiated contact with EEOC about the fact her Department Chair Adam Lankford and Brittany Vandeberg told her she was having problems because she was a new mother and treated her differently for that reason.

199.    On or about July 9, 2024, the EEO contact notified Brasher they were going to speak with her Department Chair Adam Lankford and Associate Dean/Associate Provost Lisa Dorr to investigate her claims.

200.    On or about July 16, 2024, Plaintiff's employment was terminated.

201.    But for Plaintiff's protected activity, Defendant would have retained Plaintiff in his position as an Instructor.

202.    The Defendant violated Title VII by terminating Plaintiff for engaging in protected activity.

203.    Because of Defendant's violation of the Title VII, Plaintiff has been damaged, suffering loss of pay, benefits and mental anguish.

## COUNT VI - FMLA – RETALIATION

204.    Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

205.    Brasher took 12 weeks of approved FMLA leave.

206.    Upon her return, Brasher's supervisors began to scrutinize her performance claiming she is a "new mother" and it is hard.

207.    Department Chair Adam Lankford falsely accused Brasher of teaching to an empty class in front of her peers and supervisors, he refused her leave for the care of her child, and he refused her leave to see the doctor when she was ill after Brasher requested accommodations, refused to sign off for Brasher to complete her graduate program, and refused her the ability to collect herself during a meeting wherein he triggered her grief over the death of her father. Department Chair Adam Lankford repeatedly refused to put things in writing for Brasher which not only violated policy, it failed to accommodate Brasher for her ADHD.

208. Brasher also cancelled class as a form of intermittent leave when she suffered a migraine headache-which is a serious medical condition.

209. Defendant terminated Plaintiff's employment on July 16, 2024.

210. Defendant's Department Chair Adam Lankford/ and the Deam decided to terminate Plaintiff's employment, in whole or part, because of Plaintiff's exercise of FMLA rights.

211. The Dean expressly stated Brasher was terminated because she had cancelled too many classes- which was intermittent leave granted for her serious medical condition.

212. Because of Defendant's retaliatory termination decision in violation of the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

## COUNT VII – DUE PROCESS- 1983

213. Brasher was deprived of her rights secured by the Constitution when she was deprived of her due process including but not limited to being deprived of the ability to go through the tribunal process before her termination in violation of policy.

214. The Defendant is a person who acted under color of statutes, regulations, custom, or usage, of the State of Alabama, subjected or caused to be subjected, Brasher to the deprivation of her rights, privileges or immunities.

215.    As a proximate cause and cause in fact of said violation of the Due Process clause the Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## V.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully prays for the following relief:

A.    Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the Americans with Disabilities Act;

B.    Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of Title VII of the Civil Rights Act of 1964;

C.    Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of the Pregnant Worker's Fairness Act;

D.    Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at

the Defendant's request from continuing to violate the terms of the Due Process

Clause and 1983;

     E.    Grant Plaintiff a permanent injunction enjoining the Defendant, its

agents, successors, employees, attorneys and those acting with the Defendant and at

the Defendant's request from continuing to violate the terms of the Family and

Medical Leave Act;

     F.    Enter an Order requiring the Defendant to make Plaintiff whole by

awarding reinstatement to the position she would have had, had she not been

terminated;

     G.    Award back pay, with employment benefits, front pay, liquidated

damages; compensatory damages, special damages; punitive damages nominal

damages;

     H.    Attorneys' fees and costs;

     I.    Plaintiff requests that the Court award Plaintiff equitable relief as

provided by law; and,

     J.    Any different or additional relief as determined by the Court to which

Plaintiff is entitled.

**JURY TRIAL DEMANDED**

_____

Patricia A. Gill

**OF COUNSEL:**

The Workers' Firm
2 20th Street North, Suite 900
Birmingham, Alabama 35205
T: 205.329-6392
trish@theworkersfirm.com

## PLEASE SERVE DEFENDANT AS FOLLOWS

The Board of Trustees for the University of Alabama
500 University Boulevard East
Tuscaloosa, AL 35401