FILED
2025 Jan-28 AM 09:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To: Agency(ies) Charge No(s):

☐ FEPA

☒ EEOC 9/16/2024 420-2024-04934

and EEOC

State or local Agency, if any

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Kellin Treadway Brasher | [redacted] | [redacted] |

| Street Address | City, State and ZIP Code |
|---|---|
| [redacted] | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| The Board of Trustees for the University of Alabama | 500+ | 205-348-6010 |

| Street Address | City, State and ZIP Code |
|---|---|
| 500 University Boulevard East, Tuscaloosa, AL 35401 | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN

☒ RETALIATION ☐ AGE ☒ DISABILITY ☐ GENETIC INFORMATION

☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE

Earliest | Latest: July 16, 2024

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began my employment at the University of Alabama as an Instructor in August of 2015. I taught criminal justice and cyber criminology in the Criminology and Criminal Justice Department. I went on pregnancy leave from mid November, 2021 to March 1, 2022. Upon my return from maternity leave, UA announced Adam Lankford will become the new fulltime department chair in the fall of 2022. He had been in the department as a graduate director prior to becoming department chair. We had been in the department together for a long time. In July of 2022, I started the process of requesting ADA accommodations for ADHD and migraines. I requested a quiet office place to work, and for migraines I requested to miss class on short notice as long as I notified a supervisor. I began to have issues when I came back full time in the fall of 2022 after my leave. Adam Lankford did push back on my requests for accommodations. He came back with a whole list of questions about my requests.

In August of 2022, my daycare closed, and I was looking for childcare. I wanted to meet with him, and he put off the meeting. I emailed him to let him know what was going on and assured him that I would have the class covered if I had to miss. His ultimate response was to just get a babysitter.

On or around November 7, 2022, I got really sick and lost my voice. I was headed to the doctor, so I emailed Adam Lankford and explained to him that I was sick and was going to miss class, but I had it covered. He told me to go to class anyway, the students would appreciate it if I just came in and gave a thumbs up or other affirming gestures. I attended the class and watched the TA handle the class. I went to the doctor after class.

Throughout the fall semester, after my request for accommodations, Adam Lankford engaged in strict scrutiny of me. Every other week he was finding problems with me, and I was receiving an email from him. These “problems” were not problems. For example, he accused me of teaching a class, getting paid for it, where there are no students. But he was looking at the empty section of the class and not the class that I was actually teaching. He copied several colleagues on his false accusation. Another example is when a student complained I used discussion too much in my

class rather than lecture. Brittany Vandeberg had previously peer reviewed my class and told me the students loved the discussion portion of my class and that I should incorporate it more into my lessons. Because of this heightened scrutiny and conflicting instruction, I requested a meeting with Adam Lankford and Britty Vandeberg because I wanted to discuss everything going on and wanted to talk in person.

They kept putting it off and did not want to meet until the end of the semester. I finally met with them when we broke for Christmas of 2022. The meeting was very unproductive. I was told I was doing everything wrong. At that point, I had never received any bad marks on performance evaluations, and I had never been counseled for poor performance. Because this was all news to me, I became upset. Brittany Vandeberg asked me what I was struggling with right now. Before I could speak and explain, she said I know it is hard having kids and it is tough being a mom. It was clear they were claiming my status as a new mom was a problem. That was not my issue, and this was not on the topic of discussion. Every time I tried to explain my techniques that I was using, I was told I needed to use something else.

Upon return from Christmas break things seemed to be okay. But my request for accommodations were finally granted in April of 2023. Once my accommodations were granted, Adam Lankford began scrutinizing me and micromanaging me again.

In Spring of 2023, I sent an email to the Associate Dean Lisa Dorr and the Associate Provost wanted to set up a meeting. Not long after I sent that email, my dad passed away. I ended up meeting with Lisa Dorr in September of 2023 to discuss the issues above. I also reported to Ms. Dorr that before Adam Lankford was department chair, we were all faculty. He now made the distinction that instructors are not PHD's and are not faculty. I was banned from faculty meetings. This is a violation of policy. Her advice to me was that if you are banned from faculty meetings, then instructors should have their own meetings. At the conclusion of the meeting, she said he would do what she could. I heard she talked to Adam Lankford, but nothing really happened. After this conversation, he was not only scrutinizing me, he became mean toward me.

After this meeting, we received some new faculty advisors. I emailed them and told them that the instructors would be gathering and meeting in the faculty lounge. Adam Lankford emailed me immediately and told me it was not my place to meet with the other advisors and instructors, to cancel the meeting immediately, and that I needed permission to use the faculty lounge. A couple times after that, I emailed Adam Lankford to request the use of the lounge, but he ignored those requests.

After I heard Lisa Dorr had spoken to Adam Lankford, he sent an email out stating we were still not allowed to attend faculty meetings, but if we had an issue or topic that needed to be addressed at the meetings, we could submit them to be read off during the meeting. That day I had lunch off campus with some other instructors, so we put together a list of things that we wanted addressed. I emailed the list to Adam Lankford and to the undergrad director, Adam Ghazi-Tehrani. Lankford responded immediately and said I needed to drop everything and come into a meeting with him and Brittany Vandeberg. The first week of advising was reserved for our seniors. He told me to cancel the meetings I had to in order to come in and see him. Before the meeting, I reached out to Lisa Dorr and Lesie Reid for advice. Lisa Dorr said just meet with him and see what he wants. Leslie Reid told me I can request what he wants to discuss in the meeting. She explained to me that he cannot fire me. There is a tribunal process he has to go through before anyone is terminated. I emailed him to request the agenda for the meeting. He was vague and wouldn't tell me what he wanted to talk about. I asked for more specifics, and he refused. I reminded him that one of my ADA accommodations requests was that I do better when things are written down. There were some items I wanted to talk about so I sent it to him.

On October 19, 2023, I went in for the meeting. He went line by line in my email and said if anyone is afraid of retaliation in the department then we are doing something wrong. He called me hostile and aggressive. He berated me for 90 minutes. During the meeting, Mr. Lankford said something that triggered my grief over the loss of my father. I explained this to them, while trying to catch my breath and asked for a minute before we continued. I was told I could go out into the hallway where students frequented. I just asked if I could have a minute to compose myself. But, they kept talking over me and wouldn't let me have a break.

I am also getting my doctorate at the University. There was a faculty fellowship being offered on campus. All I needed was for my department chair to sign a release to allow me to go do the fellowship outside of the department. He refused to sign it. On November 9, 2023, Adam Lankford said he could not in good conscience release me for that fellowship based on his perceived issues with me. My only issues at work were my complaints about him. He said if I

had a purely positive year, we could discuss it the following year.

During winter break when campus was closed. A student emailed me about an issue with their grade which was a technical issue with the learning management system. I wasn't checking email because it was winter break. But I checked it before school started and got it fixed before school started. On January 3, 2024, Adam Lankford sent an email to everyone stating I understand we are still on break so feel free to ignore this until we come back. The next two days he sent me 3-5 emails about the student's issue with their grade, and told me I needed to fix the student's grade. Because I didn't respond to him, he emailed me again and ultimately had the department administrative secretary call me and tell me to respond to his emails before the semester started. I responded to the email and let him know it had already been fixed and I had already received confirmation it was addressed, and the student is happy. He said great, but you don't need to be using your auto reply. I was not assigned a TA in the Spring of 2023. In the fall of 2023, my TA had a conflict with her schedule and could not help me with anything. I reached out and asked how to handle the situation and was not given any real solution. In the fall I was using auto reply to disseminate information to students. The students said they liked that because they were getting an immediate response to their questions. I had about 400 students and no TA so this made it possible to get information out to students. It made my life and the students' lives easier.

Lankford sent out an email to the listserv for full-time instructors (separate from the faculty email listserv) to offer limited availability to meet with him to discuss our evaluations. These meetings were set to take place during senior advising week, which is an issue I had already mentioned directly to Lankford. I had already reached out to a mediator on campus. I was trying to find some help or someone who would do anything. I found out from the Associate Provost Reid, via the mediator that we are not required to meet with him for our evaluations. This is in the handbook as well. I planned on not meeting with him because the meeting in October was traumatic. He emailed me a week or two later and said I noticed you did not sign up to meet. He is required to provide a written draft to discuss at the meeting. He had not sent me anything to review or discuss. I told him no thank you. I am not requesting a meeting at this time. I asked him when he would have a draft. He said he would get to it when he could, but it would be several weeks. The deadline for him to respond to the documentation provided by the faculty member. The day before the deadline, he uploaded the official evaluation before I could review it. I had 24 hours to get my response in before the deadline was over. The evaluation he submitted was full of false facts and accusations. He held it against me that I didn't meet him to discuss the evaluation. He included the fact that I did not respond quickly enough to the student about their grade quickly enough. I wrote my rebuttal and called out all the inaccuracies and policies. His response was short and said that his evaluation was an overall impression and that he would not be changing anything.

I emailed Leslie Reid, the Associate Provost. She had been a former chair lead. She told me I needed to follow the steps up the chain. I needed to contact the dean and request a meeting. The dean is supposed to receive a copy of the rebuttal and review it. At the end of May, I sent an email to the Dean Joseph Messina, and requested a meeting to discuss the inaccuracy of the evaluation. He responded and said we can meet but I will be out of town for the next 10 days, we can set something up. Before I heard back, I began talking to EEOC. On July 9, 2024, I received notice that EEO was going to begin investigation into my pregnancy and gender discrimination complaints. The EEO contact person notified me he would be speaking with Adam Lankford and Lisa Dorr. I heard back from Dean Messina on July 10, 2024 and we scheduled a meeting on July 16, 2024. I logged into the meeting.I was the one who had initially requested this meeting in order to discuss the inaccuracies and false statements included in my official faculty performance review that was submitted by Adam Lankford. However, upon beginning the meeting, the dean immediately made it clear he was not interested in discussing that. Instead, he told me he was recommending termination. He was not interested in discussing my concerns with Adam Lankford. I explained I wanted to discuss the inaccuracies and false statements of my evaluation. He agreed some was outside of the time period I asked about the false statements, accusations and are you going to look into that. He admitted there were some issues with the timing of events that were included in the FAR, but that he disagreed there were any other problems. I explained this has been going on for two years and that I had been trying to get someone to help. I explained to him it seems like you don't care. He stared at me then said he disagreed, again, that there were issues within the department. The Dean told me he was basing his termination on student instruction surveys that said I had canceled too many classes. This was part of my ADA accommodations.In Spring 2024, I believe I fully canceled two individual classes over the course of the semester where the class was not covered by either another lecturer or external work/individual meetings (all approved methods of handling missed classes, according to the bylaws and previous department admin).

On one occasion, I was in a minor car accident as I moved between classes. I was still in attendance for the next classes that day; I technically canceled class, but I sent a follow-up email soon after the initial one that said I would be able to make it to class after all and would be able to help them with their papers until the end of the class period. On another occasion during that semester, I was in the hospital, but had managed to cover most (if not all) of my class sections for the days I

might miss. I did miss other classes, but each class was appropriately covered, per the handbook and department practice. I can also provide a schedule in the syllabus of a white, male faculty member during this same time period (2023/2024) that states he was canceling at least two full weeks of class without explanation or other coverage.

I believe I have been discriminated against based on my disability, my gender, and my pregnancy. I believe I have been retaliated against for my protected activities of requesting accommodations and complaining of gender and pregnancy discrimination with the campus EEO in violation of the ADA, Title VII, or the PWFA. i was also deprived of due process in my termination.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct.<br>9/10/24 [signature]<br>*Date* *Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

Patricia Gill
trish@justiceatwork.com
Barrett & Farahany